(77 Misc. Rep. 548.)

## DONOVAN v. ERIE R. CO.

(Supreme Court, Special Term, Orange County.   September 7, 1912.)

1. EVIDENCE (§ 73*)—CONSTRUCTION AND OPERATION OF RAILROADS—PRESUMPTION OF LAWFUL CONSENT.

Where side tracks for general siding and switching purposes and gates of the usual style of rising and falling arms have been maintained and operated for a long period of years without objection, it is presumed that the same were constructed and operated under some grant or by virtue of some lawful authority.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 94; Dec. Dig. § 73.*]

2. VENDOR AND PURCHASER (§ 228*)—BONA FIDE PURCHASER—NOTICE OF ADVERSE CLAIMS.

A purchaser, with knowledge that a side track extended across the land and that it had been there for many years, and with knowledge of the manner of the operation of the track, takes title subject to the burden of the track.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 495–501; Dec. Dig. § 228.*]

3. RAILROADS (§ 73*)—RIGHT OF WAY—CONVEYANCES—ESTABLISHMENT OF RIGHTS.

Where a purchaser of land, whose contract reserved switching rights reserved in prior deeds, knew of the construction of one of the switch tracks in existence and operation at the time of the purchase and agreed on the location of the other switch track, which was constructed at the place selected by him, and the arrangement of the two switches continued for three years, he was bound by the location of the tracks, and could not thereafter object to their location, since the location by all the parties made definite and certain what was general and uncertain in the prior deed not definitely locating the track.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 179–182; Dec. Dig. § 73.*]

Action by Thomas Donovan against the Erie Railroad Company. Judgment of dismissal.

John L. Wiggins, of Middletown, for plaintiff.
Bacon & Rorty, of Goshen, for defendant.

TOMPKINS, J.   This is an action of ejectment, tried before the court without a jury.   The plaintiff acquired his title to the lands in question from William Snyder and wife and Sayre Fancher, by deed dated July 21, 1910.   Previously these same grantors had, by a deed dated January 21, 1909, conveyed to Harry D. Gould the plot immediately adjoining on the east the land conveyed to the plaintiff, and prior to the conveyance to Gould the same grantors had, by deed dated March 25, 1908, conveyed to John G. Beakes the plot immediately adjoining on the east the plot conveyed to Gould.   The three plots bound upon the north side of the right of way of the defendant railroad company, and a part of the plot conveyed to the plaintiff is a long-period leasehold interest in a triangular piece of land which juts south beyond the line of the rest of the land, and diminishes by some 20 feet the width of the right of way owned in fee by the defendant.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The southerly line of the triangular plot owned by the plaintiff is about 100 feet long. The defendant owns the land to the west of this southern portion of the triangular plot. Most of the triangular plot and all of its westerly portion is within the lines of North street, a public highway of the city of Middletown. Across the full width of the southerly portion of the triangular plot extends a side track of the defendant's railroad, and this side track has extended across that portion of the plaintiff's land during the past 50 years at least. About 1861 this side track terminated at about the plot now owned by Beakes, which is some distance to the east of the triangular plot. It has since then been extended from time to time, and now extends a long distance to the east of the triangular plot, and from which jut off a number of private switches, upon private lands, and used by the defendant for the service of its patrons.

[1] All of this side track to the west and east of the triangular plot is on the right of way owned by the defendant, and during all these years and down to the commencement of this suit no previous owner of the triangular plot objected to the defendant's use of the side track for general siding and switch purposes. As this side track has been maintained and operated across the plaintiff's triangular plot during this long period of years, the law presumes that it was constructed, maintained, and operated under some grant or by virtue of some lawful authority. Enton v. Coney Island & Brooklyn Railroad Co., 136 App. Div. 800, 121 N. Y. Supp. 793; People ex rel. New York & R. Gas Co. v. Cromwell, 89 App. Div. 291, 85 N. Y. Supp. 878; Schubkegel v. Butler, 76 App. Div. 10, 78 N. Y. Supp. 644.

[2] The plaintiff knew, at the time he purchased the leasehold to the triangular plot, that the defendant's side track extended across its southerly portion, and that it had been there for many years, and he also knew the manner of its operation. He therefore took title to the leasehold subject to the burden of defendant's said side track. It should be noted, also, that the westerly half of this southerly portion of the triangular plot is within the lines of North street. Just to the north of this side track, the defendant operates, across North street, a pair of gates of the usual style of rising and falling arms. The easterly section of these gates is operated from an iron post set at the easterly curb line, from which the long arm of that portion of the gate extends half way across the road bed of North street, and the short arm across the sidewalk. These gates are operated by the defendant at this curb crossing, and are necessary for the protection of the public. The gates are south of the north line of the defendant's right of way at the east of the triangular plot.

The plaintiff is not entitled to have the side track removed from the southerly portion of the triangular plot, for the reason that he purchased the property with knowledge of its presence and use thereof by the railroad company for many years; nor is he entitled to have the easterly section of the gate removed, for it must be assumed that the defendant has, by a grant, an easement to use the southerly portion of the triangular plot, and the portion that juts south of the north line of defendant's right of way for the side track and its said gates.

[3] The deed of July 21, 1910, was given to the plaintiff in compliance with a contract of purchase and sale, between him and the grantors, dated March 5, 1909. The deed recites:

"The premises above described are conveyed subject to the rights of H. D. Gould to maintain a switch across the rear portion of the lands."

The contract recites that the conveyance to the plaintiff shall be subject to—

"the rights reserved in the deed to John G. Beakes in and to the switch partly on said premises; also the rights in relation to the switch reserved in the deed to Harry D. Gould."

From a reading of the contract and deed, it clearly appears that the grantors and the plaintiff distinguished between the land conveyed in fee and the leasehold to the triangular plot, of which latter the "right, title, and interest" only of the grantors was conveyed. The word "premises," in the contract and deed, appears to refer only to the portion conveyed in fee. The deed to Gould grants him the—

"right to lay, construct, and maintain a certain single-track switch across the extreme corner of their lands from the track and lands of the railroad to the lands above described."

This deed also conveys the land conveyed to Gould—

"subject to any and all rights and easements now owned by John G. Beakes in and to the switch and its appurtenances now passing over the rear of the above-described lot."

These two switches, Gould's and Beakes', are considered by this Gould deed as separate and distinct from the defendant's side track. At all points opposite Gould's and Beakes' lands, the side track is within the right of way owned by the defendant. The Gould switch was not then built. The Beakes switch was then in use, and joined the defendant's side track some distance to the east of the plaintiff's lands.

During the early spring of 1909, while the plaintiff was in possession of land under the contract of purchase and sale, the Gould switch was constructed as it now is. As originally planned, it would join the defendant's side track to the east of the triangular plot, after passing over a small portion of the main part of the plaintiff's land. But the plaintiff, who was right on the ground, and saw how it was about to be built, would not permit it to be so built, and required the railroad company to build it as it now is, extending further to the west and joining the defendant's side track a short distance within the triangular plot. The Beakes switch was at this same time changed so as to run into the Gould switch a short distance east of the triangular plot. This change of the Beakes switch was made for the sake of convenience and safety. The switch stand, which operates the Gould switch, is within the triangular plot, and that which operates the Beakes switch extends a couple of feet from the north line of defendant's right of way upon the plaintiff's land. The plaintiff was present on the ground when the switch stands and the Beakes switch were so placed, and agreed that they should be so placed, and they have occupied the same

position ever since; in fact, the western end of the Gould switch was located where it now is on the demand of the plaintiff.

Neither the Gould deed nor the plaintiff's contract of purchase and sale locates specifically either of the two switches. This location by all parties made definite and certain what was before general and uncertain, and the arrangement of these two switches cannot now, three years later, be changed by the plaintiff against the wish of any of the other three parties. The ruling of Judge Bigelow in Jennison v. Walker, 11 Gray (Mass.) 423, a case quite similar to this, was that:

"Where an easement in land is granted in general terms, without giving definite location and description to it, so that a part of the land over which the right is to be exercised cannot be definitely ascertained, the grantee does not thereby acquire a right to use the servient estate without limitation as to the place or mode in which the easement is to be enjoyed. When the right granted has been once exercised in a fixed and definite course, with the full acquiescence and consent of both parties, it cannot be changed at the pleasure of the grantee. * * * This rule rests on the principle that when the terms of a grant are general and indefinite, so that its construction is uncertain and ambiguous, the acts of the parties contemporaneous with the grant, giving a practical construction to it, shall be deemed to be a just exposition of the intent of the parties."

This ruling is equitable, and has been approved by the courts of this state, and should control in this case. Onthank v. L. S. & M. S. Railroad Co., 71 N. Y. 197, 27 Am. Rep. 35; Hines v. Hamburger, 14 App. Div. 577, 43 N. Y. Supp. 977. The two switches have been operated as they now are since May, 1909, and since more than a year previous to the time when the plaintiff took title under his contract. The plaintiff is not entitled to have either of the switches or switch stands removed.

The complaint should be dismissed upon the merits, with costs.